CRAWLEY, Judge.
In September 1992, James E. Crook, Jr., and Victoria C. Crook sued American Inn, Inc., alleging that it had violated their civil rights by denying them accommodations at its motel because of their race. The Crooks requested a declaratory judgment as to their rights, an injunction to prohibit the motel from discriminating against them, compensatory and punitive damages, and attorney fees and costs. Following ore tenus proceedings, the trial court found that the motel had not violated the Crooks’ civil rights. The Crooks argue on appeal that the trial court erred in finding for the motel.
The Crooks sued the motel pursuant to the CM Rights Act of 1964, 42 U.S.C. § 2000a, which provides:
“All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.”
It is undisputed that the motel is subject to the provisions of § 2000a. See 42 U.S.C. § 2000a(b)(l).
The United States Supreme Court set out the test for proving intentional discrimination in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). McDonnell Douglas involved a case of alleged employment discrimination. The Court held that a plaintiff proves a prima facie case of racial discrimination by establishing,
“(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant’s qualifications.”
411 U.S. at 802, 93 S.Ct. at 1824. The Court further held, “The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee’s rejection.” Id. The Court then held that the plaintiff has the right to “be afforded a fair opportunity to show that the petitioner’s stated reason for the respondent’s rejection was in fact pretext.” 411 U.S. at 804, 93 S.Ct. at 1825.
Although McDonnell Douglas involved employment discrimination, its test for proving intentional discrimination is tailored to apply to actions brought pursuant to § 2000a. Cook County Bar Auxiliary v. Hyatt Corp., [Ms. 83 C 6384, March 28, 1986] (unpublished memorandum), 1986 WL 334 (N.D.Ill.1986). In order to establish a prima facie case of racial discrimination in the public accommodations context, applying the McDonnell Douglas test, the Crooks must prove: (1) that they are members of a minority; (2) that they attempted and were qualified to obtain a room; (3) that the motel rejected them; and, (4) that the room remained available after the rejection. Id. The burden then shifts to the motel which must give a legitimate reason for not allowing the *363 Crooks to stay in the room, and then the Crooks must prove the motel’s reason is merely a pretext for illegal discrimination. See, McDonnell Douglas, supra.
The Crooks established a prima facie ease of illegal discrimination. They are African-Americans; they made a reservation for a room at the motel, which the motel accepted; the motel declined to give them a room; and the motel subsequently rented rooms to other customers. The motel’s owner testified that he denied the Crooks a room because the Crooks had made a reservation for two people, but that they had six children in their car when they arrived. The owner further testified that the motel has a “two-to-a-bed” policy, which is posted at the registration desk, and he said he feared that the Crooks would pay the two-person rate but have several children in the room without paying for their stay. He testified to the motel’s reason for that policy:
“[T]he reason this exists is because frequently in our business people will come to the motel, economy being the way it is, they want to get the cheapest possible price they can for a motel room. So even though they may have more people than they’re actually declaring on a reservation or registration form, they’ll only say they have so many, rent the room. Because we rent based on the number of people. The more occupants there are in the room, the more money we charge for the room.
“So they’ll declare fewer people, pay a cheaper price, and then put the total number of people that they have in the room or at least attempt to do that. And that’s why we have this policy. That’s one of the reasons.
“To continue with it, there is only registered guests after ten p.m. That is because for the same reason. Some people will rent a room. There is really like six people or five people or four people in this group, but they register as two. And they say, oh, no, these people are only visiting. And we say that’s okay if you have a visitor, only the registered guest can be here after ten o’clock.
“And, of course, no parties because we have a nice clean motel. We don’t rent to drunks. So we don’t like parties. We don’t like disturbing our guests.”
The owner also testified that he told Mr. Crook over the telephone that no two-bed rooms were available, and that all that was available was a one-bed room. The Crooks had difficulty obtaining reservations at any motel because of an archery tournament in town.
The Crooks argue that the owner’s reason for the denial is a pretext for illegal discrimination. The owner testified that he does not discriminate against African-Americans. Other African-Americans were staying at the hotel that night, and the owner testified that the motel has hosted an African-American golf tournament.
The owner testified that Mr. Crook told him no children would be staying at the motel. Mr. Crook testified that he told the owner that only he and his wife would be staying at the motel and that his sisters were coming to take the children elsewhere. The owner testified that he asked Mr. Crook to take the children to his sisters’ home himself, but that Mr. Crook refused, became belligerent, and demanded a room. The owner testified that he had had problems in the past with people paying for two in a room, but bringing several others. The owner further stated that the problems in the past had resulted in damage to several rooms and complaints from other patrons. The owner testified that he would have rented the room to the Crooks if Mr. Crook had taken the children elsewhere, but Mr. Crook’s belligerent attitude upset the owner. The owner also testified that he doubted that the children would be picked up, given that Mr. Crook had told him on the telephone that no children would be staying, yet he observed several children in the Crooks’ car when the Crooks arrived.
After reviewing the testimony and exhibits, we conclude that the trial court did not err in finding that the motel did not discriminate against the Crooks in denying them a room. The owner’s reason for the refusal was nondiscriminatory, and, although the Crooks presented much evidence from several witnesses, it was not sufficient to *364 rebut the owner’s nondiscriminatory reason for the refusal. We note that the trial court heard much conflicting evidence and that its resolution of the conflicts is not reversible error. Jones v. LeFlore, 421 So.2d 1287 (Ala.Civ.App.1982). Therefore, the judgment of the trial court is affirmed.
AFFIRMED.
YATES, J., concurs.
ROBERTSON, P.J., concurs in the result.