MOORE, Judge.
Jerry W. Kent (“the father”) appeals from a judgment entered by the Morgan Circuit Court (“the circuit court”) in an action to modify and enforce a previous custody judgment. We reverse the circuit court’s judgment.

Procedural History

On July 21, 2009, the Morgan Juvenile Court (“the juvenile court”) entered a judgment adjudicating the father to be the legal father of K.K. (“the child”) and ordering him to pay child support to the child’s mother, Heather Herchenhan (“the mother”).[1] On August 24, 2010, the juvenile court entered a judgment modifying the father’s child-support obligation. On November 5, 2013, the circuit court entered a judgment that, among other things, awarded the father custody of the child, awarded the mother supervised visitation, and ordered the mother to pay child support.
On October 21, 2014, the mother filed a complaint requesting, among other things, that the circuit court enter a judgment modifying her visitation with the child; she also sought a finding of contempt against the father for his failure to comply with the prior visitation judgment and requested the circuit court to punish the father for his noncomplianee and to order him to pay her attorney’s fees. On December 4, 2014, the father answered the complaint. On December 17, 2014, the father filed a counterclaim requesting that the circuit court hold the mother in contempt for failure to pay child support. On February 23, 2015, the mother replied to the counterclaim.
After a trial, the circuit court entered a judgment on May 13, 2015, awarding the mother unsupervised visitation with the child, finding the father in contempt for interfering with the mother’s visitation, ordering the father to be incarcerated for 120 days but suspending that sentence and placing the father on probation for 24 months, ordering the father to pay the mother’s attorney’s fees, and declining to hold the mother in contempt but determining the amount of her child-support ar-rearage. On June 10, 2015, the father filed a postjudgment motion challenging, among other things not relevant to this appeal, the visitation award, the contempt finding, and the award of attorney’s fees to the mother. The father requested oral argument and the opportunity to present evidence in support of his motion. The circuit court denied the father’s post-judgment motion on June 25, 2015, without holding a hearing. On August 5, 2015, the father filed his notice of appeal.

Discussion

On appeal, the father argues that the circuit court lacked jurisdiction to enter its November 5, 2013, and May 13, 2015, judgments. Specifically, he argues that the circuit court did not have jurisdiction to modify the juvenile court’s previous custody determination.
“After January 1, 2009, the effective date of the Alabama Juvenile Justice Act (‘the AJJA’), Act No. 2008-277, Ala. Acts 2008, now codified as § 12-15-101 et seq., Ala.Code 1975, and before May 14, 2012, the effective date of Act No. 2012-383, Ala. Acts 2012, which, among other things, amended the AJJA in certain respects, this court held in several cases, including J.H. v. J.W.[, 69 So.3d 870 (Ala.Civ.App.2011),] and Ex parte T.C., [63 So.3d 627 (Ala.Civ.App.2010),] that, *1082 after the effective date of the AJJA, a juvenile court no longer had continuing jurisdiction over a child as to whom it had adjudicated custody unless its judgment adjudicating custody had found the child to be dependent, delinquent, or in need of supervision. In response to those decisions, the legislature enacted Act No. 2012-383. Among other things, Act No. 2012-383 amended the AJJA to add a provision now codified as § 12-15-117.1, Ala.Code 1975. Subsection (a) of § 12-15-117.1 states:
“ ‘The Legislature finds that it was its original intent in the adoption of the Alabama Juvenile Justice Act (Act 2008-277) for a juvenile court to retain continuing jurisdiction in all cases in its jurisdiction to the extent provided by law. Act 2012-383 is curative and shall apply retroactively to ratify and confirm the exercise of continuing jurisdiction of the juvenile court to modify and enforce a judgment in cases filed in juvenile court on or after January 1, 2009, and prior to May 14, 2012. Any order of a juvenile court issued while exercising jurisdiction pursuant to this subsection during this time shall be deemed valid.’ ”
Ex parte F.T.G., 199 So.3d 82, 85 (Ala.Civ. App.2015). Accordingly, if the action resulting in the entry of the circuit court’s November 5, 2013, judgment was commenced “ ‘on or after January 1, 2009, and prior to May 14, 2012,’” id., the circuit court’s exercise of jurisdiction in this matter is deemed valid. The record does not indicate when that action was commenced.
“An appellate court does not presume error; the appellant has the affirmative duty of showing error. Perkins v. Perkins, 465 So.2d 414 (Ala.Civ.App.1984). Appellate review is limited to the record and cannot be altered by statements in briefs, Bechtel v. Crown Central Petroleum Corp., 451 So.2d 793 (Ala.1984). Error asserted on appeal must be affirmatively demonstrated by the record. If the record does not disclose the facts upon which the asserted error is based, the error may not be considered on appeal. Liberty Loan Corp. of Gadsden v. Williams, 406 So.2d 988 (Ala.Civ.App. 1981).”
Greer v. Greer, 624 So.2d 1076, 1077 (Ala. Civ.App.1993). Because, in the present case, the father has failed to show that the circuit court’s exercise of jurisdiction that resulted in the entry of the November 5, 2013, judgment was not valid, we must presume that the circuit court’s actions were proper.
The father also argues that the circuit court erred in declining to hold a hearing on his postjudgment motion.
“This court has held that
“ ‘[generally, a movant who requests a hearing on his or her post-judgment motion is entitled to such a hearing. Rule 59(g), Ala. R. Civ. P.; Flagstar Enters., Inc. v. Foster, 779 So.2d 1220, 1221 (Ala.2000). A trial court’s failure to conduct a hearing is error. Flagstar Enters., 779 So.2d at 1221.’
“Dubose v. Dubose, 964 So.2d 42, 46 (Ala.Civ.App.2007); see also Staarup v. Staarup, 537 So.2d 56, 57 (Ala.Civ.App. 1988) (‘[Rule 59(g) ] mandates that, when a hearing is requested on a motion for new trial, the hearing must be granted.’).
“[However], this court has recognized an exception to the general rule that the denial of a postjudgment motion without conducting a requested hearing is reversible error. See Gibert v. Gibert, 709 So.2d 1257, 1258 (Ala.Civ.App.1998) (‘A trial court errs by not granting a hearing when one has been requested pursu *1083 ant to Rule 59(g); however, that error is not necessarily reversible error.’). ‘On appeal, ... if an appellate court determines that there is no probable merit to the motion, it may affirm based on the harmless error rule.’ Palmer v. Hall, 680 So.2d 307, 307-08 (Ala.Civ.App. 1996); see also Lowe v. Lowe, 631 So.2d 1040, 1041 (Ala.Civ.App.1993) (‘Denial of a Rule 59 motion without a hearing is reversible error if the movant requested a hearing and harmful error is found.’). The Alabama Supreme Court has stated:
“‘Harmless error occurs, within the context of a Rule 59(g) motion, where there is either no probable merit in the grounds asserted in the motion, or where the appellate court resolves the issues presented therein, as a matter of law, adversely to the movant, by application of the same objective standard of review as that applied in the trial court.’
“Greene v. Thompson, 554 So.2d 376, 381 (Ala.1989). However, ‘[w]hen there is probable merit to the motion, the error cannot be considered harmless.’ Dubose, 964 So.2d at 46.”
Wicks v. Wicks, 49 So.3d 700, 701 (Ala.Civ.App.2010).
In the present case, we conclude that at least one of the issues raised in the father’s postjudgment motion—whether the circuit court erred in ordering him to pay the mother’s attorney’s fees—has probable merit. The circuit court’s judgment stated:
“The Court finds that the Father interfered with the Mother’s visitation on 24 occasions and is sentenced to jail for 5 days for each occasion the Father interfered with the Mother’s visitation for a total of 120 days in the Morgan County Jail. The 120 days in the Morgan County Jail are suspended and the Father is placed on Probation for 24 months. The Father must not interfere with the visitation of the Mother with the minor child during that 24 months of probation.”
“Civil contempt sanctions seek to compel or coerce compliance with orders of the court in the future, while a criminal contempt is one in which the purpose of the proceeding is to impose punishment for disobedience of orders of the court.” Charles Mfg. Co. v. United Furniture Workers, 361 So.2d 1033, 1035 (Ala. 1978). “Sanctions for criminal contempt are limited by statute to a maximum fine of $100 and imprisonment not to exceed five days. See Ala.Code 1975, § 12-11-30(5). On the other hand, sanctions for civil contempt may exceed those limits and may continue indefinitely until the contem-nor performs as ordered.” Pate v. Guy, 934 So.2d 1070, 1072 (Ala.Civ.App.2005).
“ ‘The question of whether [an action involves] civil contempt or criminal contempt becomes important ... because a contemnor must be in a position to purge himself from the contempt. Mims v. Mims, 472 So.2d 1063 (Ala.Civ. App.1985). In order to purge himself in a criminal contempt case, the contemnor must pay the fine imposed, serve the authorized time, or do both. Kalupa v. Kalupa, 527 So.2d 1313 (Ala.Civ.App. 1988), In order to purge himself in a civil contempt case, the contemnor must comply with the court’s order. Rule 33.4(b), A[la]. R.Crim. P.’ ”
Davenport v. Hood, 814 So.2d 268, 272-73 (Ala.Civ.App.2000) (quoting Hill v. Hill, 637 So.2d 1368, 1370 (Ala.Civ.App.1994)).
In the present case, the mother petitioned the circuit court to punish the father for willfully violating the supervised-visitation provisions of the November 5, 2013, judgment. The circuit court found that the father had committed contempt of court by interfering with the mother’s *1084 court-ordered visitation on 24 separate occasions. The circuit court “sentenced” the father to jail for 5 days for each act of contempt, but it suspended the sentence and placed the father on “probation” for 24 months. As a condition of probation, the circuit court ordered the father to comply with its new visitation order, which it instituted in the May 13, 2015, judgment. Based on the terminology used, the order of a definite schedule of incarceration in accordance with the limits of the criminal-contempt statute, and the institution of conditions in which probation could be revoked, we conclude that the contempt finding was in the nature of a criminal-contempt finding. Pate, 934 So.2d at 1072 (concluding that trial court’s order of 24 hours’ incarceration for failure to comply with visitation order was in the nature of a criminal-contempt finding); Mullins v. Sellers, 80 So.3d 935, 942 (Ala.Civ.App. 2011) (“Accordingly, despite the fact that the order of commitment to jail indicates that the father was found guilty of civil contempt, we conclude that the trial court found the father guilty of criminal contempt because it imposed a definite jail sentence as the sanction for the father’s specific and identifiable violations of the August 2001 modification judgment from June 2002 through October 2008.”).
We disagree with the dissent that the judgment found the father in civil contempt. See 215 So.3d at 1088 (Thompson, P.J., concurring in part and dissenting in part). The purpose of the sanctions imposed by the circuit court clearly is not to compel compliance with the visitation provisions entered on November 5, 2013. The circuit court amended the visitation provisions in its May 13, 2015, judgment so that the original visitation provisions are no longer in effect. At this point, the father cannot comply with the November 5, 2013, visitation provisions.
Furthermore, the requirement that the father comply with the amended visitation provisions while on probation does not transform the criminal contempt into civil contempt. In Taylor v. Taylor, 560 So.2d 768, 770 (Ala.Civ.App.1990), the trial court found a husband in contempt for violating a restraining order and sentenced the husband to 5 days’ confinement plus an additional 25 days’ confinement that was suspended conditioned upon his compliance with the order. This court stated:
“[W]e find the court’s imposition of an additional twenty-five-day sentence to be improper. Because the sentence is to be immediately imposed upon the husband’s violation of the trial court’s directives, it is primarily penal and not coercive in nature. Thus, it appears to this court to be an attempt to punish the husband for any future criminal contempt, despite the trial court’s statement that such sentence was imposed to ensure compliance with the trial court’s orders.”
560 So.2d at 770. As in Taylor, the circuit court suspended the sentence of the father on the condition that he comply with the amended visitation provisions. Should the father fail to meet that condition, the circuit court can revoke his probation and impose the sentence; thus, the sentence is “primarily penal and not coercive in nature.” Id.
“[I]n a criminal-contempt action, ‘the award of attorney’s fees is not proper.’ ” Ex parte Collins, 860 So.2d 1259, 1260 (Ala.2003) (quoting State ex rel. Payne v. Empire Life Ins. Co. of America, 351 So.2d 538, 545 (Ala.1977)). Although the mother cites Ala.Code 1975, § 30-2-54, in support of the circuit court’s judgment,
“we note that the legislature enacted § 30-2-54, Ala.Code 1975, to allow an attorney-fee award to a prevailing party in actions for divorce or to recover un *1085 paid child-support, alimony, or maintenance awards. The pertinent ‘action’ in this case [in which the mother was the prevailing party] concerned child visitation, not support, and § 30-2-54, Ala. Code 1975, thus does not apply.”
Pate, 934 So.2d at 1072-73. We note that the mother’s attorney filed an affidavit after the trial averring that he had spent a total of 20.5 hours on this case, that he charges $150 per hour, and that his attorney’s fee on this case totaled $3,075. He also averred that the court costs for this case were $321.36. The circuit court ordered the father to pay “the [mjother’s attorney fees and court cost in the amount of $3,075.00 in attorney fees and $321.36 for court cost[s] for a total of $3396.36.” Thus, it is clear that the circuit court ordered the father to pay the entirety of the fees charged by the mother’s attorney for his time expended on this case. Presumably, at least a portion of the attorney’s time was spent working on the contempt issues; hence, the trial court’s award of attorney’s fees would be at least partially directly related to the contempt issues. Because the father’s argument regarding the attorney-fee issue has probable merit, we conclude that the circuit court’s error in failing to hold a hearing on the father’s postjudgment motion was not harmless.
Because we cannot conclude that the father’s postjudgment motion has “‘no probable merit’” and because we cannot “ ‘resolve[ ] the issues presented ... as a matter of law, adversely to the [father],’ ” we cannot conclude that the circuit court’s error in failing to hold a hearing on the postjudgment motion was harmless. Wicks, 49 So.3d at 701. Based on the foregoing, we reverse the circuit court’s judgment and remand the cause with instructions to the circuit court to hold a hearing on the father’s postjudgment motion. Because we have already determined that at least one issue raised in the father’s postjudgment motion has probable merit, we pretermit discussion of the father’s remaining substantive arguments on appeal that were raised in his post-judgment motion.
The father makes one remaining argument that was not raised in his post-judgment motion—that the circuit court erred in calculating the amount of the mother’s child-support arrearage. He argues that the correct arrearage amount is “$6,139.55 in arrearage and $389.80 in interest.” In her brief to this court, the mother correctly notes that the circuit court’s judgment on this point is “convoluted,” and she concedes that the father’s calculations are correct. Therefore, we reverse the circuit court’s judgment insofar as it determined the amount of the mother’s child-support arrearage, and we instruct the circuit court to reconsider that issue in light of the parties’ agreement on the arrearage amount. See Lowe v. Nationwide Ins, Co., 521 So.2d 1309 (Ala. 1988) (accepting stipulation of error on appeal).
REVERSED AND REMANDED WITH INSTRUCTIONS.
DONALDSON, J., concurs.
PITTMAN, J., concurs in the result, without writing.
THOMPSON, P.J., concurs in part and dissents in part, with writing, which THOMAS, J., joins.

. "[A] child-support order constitute[s] a custody award in favor of the recipient parent.” M.R.J. v. D.R.B., 17 So.3d 683, 685 (Ala.Civ. App.2009).