[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 1, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-15477

_____

D. C. Docket No. 03-00572-CV-J-25-HLA-MCR

UNITED STATES OF AMERICA,
for the use and benefit of
Southeast Enterprise Group,
Inc., a Florida corporation,

Plaintiff-Counter
Defendant-Appellee,

versus

SKANSKA USA BUILDING, INC.,
a foreign corporation formerly
known as Beers Construction Company,

Defendant-Counter
Claimant-Appellant,

AMERICAN HOME ASSURANCE COMPANY,
a foreign corporation,

Defendant-Appellant,

CAPITOL INDEMNITY CORPORATION,

Counter-Defendant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

**(December 1, 2006)**

Before CARNES and MARCUS, Circuit Judges, and JORDAN,[*] District Judge.

PER CURIAM:

The General Services Administration hired Skanska USA Building, Inc. as the general contractor for the construction of a new federal courthouse in Jacksonville, Florida. Skanska in turn contracted with Southeastern Enterprise Group, Inc. to build the roof of the courthouse. The subcontracting agreement required Southeastern to furnish and install a "complete roofing system" that had, among other things, a "watertight fit."

Months into the roof construction, Skanska noticed that water was leaking into the fourteenth floor and asked Southeastern to fix the leak. After several attempts to fix the problem, Southeastern discovered, and relayed its discovery to Skanska, that it was the installation of the concrete on the parapet walls, and not the roof Southeastern had built, that was causing the leak. As to any other lingering issues about the roof, Southeastern told Skanska that it stood ready and

_____

[*] Honorable Adalberto Jordan, United States District Judge for the Southern District of Florida, sitting by designation.

2

willing to finish the job and awaited a final inspection of its work up to that date so that it could complete the project.

Skanska refused to schedule a final inspection and again insisted that Southeastern fix the leak. Because the leak was caused by a problem unassociated with the roof, however, it was outside the scope of Southeastern's contract and expertise. Skanska thereafter terminated the subcontract.

In response, Southeastern sued Skanska for breach of contract and, pursuant to 40 U.S.C. § 3133(b), sought to collect its portion of the payment bond that Skanska had put up as the general contractor of the courthouse project. After a six day trial the jury found that Skanska had prevented Southeastern from fulfilling its contractual obligations and therefore breached the agreement. The jury awarded Southeastern $25,000.00 as damages for Skanska's breach. The district court denied Skanska's post-trial motions for judgment as a matter of law and a new trial, and it entered judgment in accord with the jury's verdict.

The subcontract also required Skanska to pay all attorneys' fees incurred in the prosecution of a breach of contract claim.[1] On Southeastern's motion, the

---

[1] The subcontract had a unilateral attorneys' fees provision in favor of Skanska, but the district court found that "the unilateral attorney fee provision in the contract between the parties is reciprocal per Florida Statutes Section 57.105(7)." Section 57.105(7) provides that "[i]f a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract." Fla. Stat. § 57.105(7). The parties do not dispute the district court's conclusion

3

district court awarded it $229,697.50 in attorneys' fees.

Skanska appeals the underlying judgment, focusing on the district court's decision to deny its motions for judgment as a matter of law and a new trial, and also appeals the district court's order awarding attorneys' fees to Southeastern.

## I.

Skanska contends that the district court should have granted its motion for judgment as a matter of law because, it argues: (1) Southeastern failed to present any evidence that Skanska wrongfully prevented Southeastern from substantially completing the roof; (2) Southeastern breached the subcontract by not providing a work schedule; (3) Southeastern breached the subcontract by not completing its work on time; and (4) Southeastern failed to establish its damages to a reasonable certainty. Skanska, however, is wrong on each of those arguments.

First, viewing the testimony and other evidence in favor of the nonmoving party, as we must, see Collado v. United Parcel Serv., Co., 419 F.3d 1143, 1149 (11th Cir. 2005), there was sufficient evidence to support the jury's finding that Skanska wrongfully prevented Southeastern from completing the roof. There was evidence that Southeastern told Skanska numerous times before termination of the subcontract that it was ready to fix any and all problems with the roof; that

---

that the attorneys' fee provision in the subcontract is bilateral because of § 57.105(7).

Skanska refused to give Southeastern specific directions or explanations so that it could fix the problem areas; and that Skanska further impeded the completion of the roof by causing damages to portions of it that had already been built by Southeastern.

In support of its position that Southeastern was not wrongfully prevented from completing the roof, Skanska points to Southeastern's unwillingness to fix the leak. Southeastern, however, presented evidence that the leak came from the installation of the parapet walls and that there was nothing wrong with the roof itself that caused the leak. The jury, presented with that evidence, apparently accepted Southeastern's version of the facts, and we cannot second guess the jury's resolution of any conflict in evidence.

Second, the fact that Southeastern did not provide Skanska with a work schedule does not require judgment in Skanska's favor. As it was narrowed by the parties during the course of the litigation, the case was tried to the jury on one issue: whether "Skanska wrongfully interfere[d] with, or prevent[ed] [Southeastern] from completing its obligations, under the contract." That Southeastern did not provide a work schedule does not mean that it failed to complete its obligations under the contract or that any failure to complete them was not caused by Skanska.

Third, the fact that Southeastern did not complete the roof on time does not entitle Skanska to judgment as a matter of law. The district court found that Southeastern did not substantially complete the roof as required by the contract, and Southeastern does not dispute that finding here. The question is whether Skanska wrongfully prevented Southeastern from completing the roof on time. The jury found that it did, and there was evidence in the record to support that finding.

As to Skanska's final point, there was sufficient evidence establishing to a reasonable certainty the jury's $25,000 damage award. Skanska's own witness, the project architect, testified that Southeastern "deserved the $25,000" for adjustments that Skanska required it to make to the roof design, which had increased Southeastern's costs.

## II.

Skanska next contends that the district court erred in denying its motion for a new trial because the testimony of John Reaves, Southeastern's president, regarding Southeastern's damages was not based on his personal knowledge and therefore was not competent to support the jury verdict. Skanska, however, did not object to the admission of Reaves' damages testimony at trial, which precludes our review of the evidentiary error on appeal. Fed. R. Evid. 103(a)(1) ("Error may not

6

be predicated upon a ruling which admits . . . evidence unless a substantial right of the party is affected, and . . . a timely objection or motion to strike appears of record . . . .); Christopher v. Cutter Labs., 53 F.3d 1184, 1192 (11th Cir. 1995) (a party must object to a witness's inadmissible testimony in order to preserve the issue of its improper admission on appeal). Not only that, but any error by the district court in admitting Reaves' damages testimony was harmless. The jury's $25,000 damages verdict shows that it disregarded Reaves' account of Southeastern's damages, which he estimated at a much higher amount, and instead credited the testimony of Skanska's own witness—the project architect—that Southeastern was only entitled to $25,000 for the change in design of the roof. See Fed. R. Evid. 103(a).

## III.

Skanska's appeal of the district court's decision to award Southeastern $229,697.50 in attorneys' fees has more merit. After the jury verdict, Southeastern moved for attorneys' fees pursuant to Fed. R. Civ. P. 54(d)(2). Skanska filed two motions in response. First, Skanska moved, pursuant to Rule 54(d)(2)(C), that the district court hold an evidentiary hearing on Southeastern's attorneys' fees motion, or at least allow Skanska to submit affidavits in opposition to the fees Southeastern claimed. Second, Skanska moved the district court to stay consideration of

7

Southeastern's attorneys' fees motion until after the court had ruled on Skanska's pending motion for judgment as a matter of law.

In a single order the district court granted Skanska's motion to stay its consideration of the attorneys' fees motion but denied as "moot" Skanska's request for evidentiary submissions, apparently because the court first wanted to decide Skanska's pending motions for judgment as matter of law and a new trial to see if Southeastern remained the prevailing party. Six months later the district court denied Southeastern's motion for a new trial and judgment as a matter of law. At the same time, however, the court also granted Southeastern's motion for attorneys' fees and awarded it $229,697.50, without ever having afforded Skanska the opportunity it requested to submit evidence in opposition.

Skanska argues that the district court erred in awarding fees to Southeastern without allowing Skanska to submit opposition affidavits or witnesses at an evidentiary hearing. We agree. Rule 54(d)(2)(C) provides that "[o]n request of a party or class member, the court shall afford an opportunity for adversary submissions with respect to the [attorneys' fees] motion." Fed. R. Civ. P. 54(d)(2)(C). Skanska timely requested an opportunity to present evidence to the district court in opposition to Southeastern's attorneys' fees request, and the district court acknowledged that request. Rule 54(d)(2)(C) is not discretionary; it

8

says that the court "<u>shall</u> afford an opportunity for adversary submissions." Id. (emphasis added). The district court's decision to decide the attorneys' fees motion without affording Skanska the opportunity to submit opposition evidence violated that rule.

Southeastern counters that the violation was harmless because any evidence that Skanska could have submitted to the district court would have duplicated the statements Skanska made in its memorandum of law in response to the attorneys' fees motion and, in any case, would not have changed the outcome of the district court's decision to award $229,697.50 in fees. Of course, Southeastern is speculating. We don't know what evidence Skanska would have submitted to the district court if it had been allowed to do so. Skanska could have offered affidavits from local attorneys swearing that the fees charged by Southeastern's lawyers were excessive; or it could have offered expert testimony that some of the work done by the four law firms that represented Southeastern was duplicative and overlapping; or it could have offered evidence that Southeastern's attorneys spent more hours than was necessary in working on the case. Because any of this would have been relevant to the fee award Skanska should have been given the opportunity it requested to present evidence. Only after Skanska has been permitted to offer any relevant evidence it has can the district court properly calculate the appropriate

amount of fees Skanska should pay.

## IV.

We AFFIRM the judgment in favor of Southeastern but VACATE the order awarding attorneys' fees and REMAND the case with instructions that Skanska be permitted to submit evidence, as required by Fed. R. Civ. P. 54(d)(2)(C), before the amount of attorneys' fees it must pay is decided.